UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KIMBERLY ADAMS, *et al.*,<br><br>              Plaintiffs,<br><br>    vs.<br><br>JP MORGAN RETIREMENT PLAN SERVICES, LLC, *et al.*,<br><br>              Defendants. | Case No.<br><br>NOTICE OF REMOVAL |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendants[1] hereby remove *Stahr D. Ashurst, et al. v. J.P. Morgan Retirement Plan Services, LLC, et al.*, Case No. 1216-CV23784 ("*Ashurst*") and *Kimberly Adams, et al. v. J.P. Morgan Retirement Plan Services, LLC, at al.*, Case No. 1216-CV25270 ("*Adams*") (collectively the "Lawsuit"), from the Circuit Court of Jackson County, Missouri, Sixteenth Judicial Circuit, to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446. In support of removal, Defendants state as follows:

**INTRODUCTION**

1. Plaintiffs' counsel, Rouse Hendricks, have been attempting to avoid federal jurisdiction over inherently federal claims since July 2012. Although artfully pled several times in an effort to avoid federal jurisdiction, the Plaintiffs in each of the actions are participants in an ERISA[2] plan maintained for employees of the Government Employees Health Association ("GEHA") who claim that Defendants mismanaged the assets and misrepresented the nature of a

---

[1] Defendants are J.P. Morgan Retirement Plan Services, LLC, JP Morgan Chase & Co., J.P. Morgan Investment Management, Inc., J.P. Morgan Invest Holdings, LLC, David Embry, Jennifer Mendicki O'Neill, and James E. Staley.

[2] ERISA is the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.

5823427 v1

stable value fund called the Stable Asset Income Fund ("SAIF") that was offered to them solely as an investment in their ERISA plan.

2. The procedural odyssey began when Rouse Hendricks voluntarily dismissed their first lawsuit – *Adair v. J.P. Morgan Chase & Co.*, Case No. 1216-CV19512 ("*Adair*") – to avoid removal under the Class Action Fairness Act ("CAFA"). They then filed *Ashurst* and *Adams* as two ostensibly separate, but materially identical, actions in the same state court to avoid CAFA removal. Defendants, however, removed those actions as preempted by ERISA and precluded by SLUSA.[3] Defendants argued that both were completely preempted by ERISA because they necessarily alleged that Defendants had acted as ERISA fiduciaries and breached ERISA fiduciary duties. Defendants also argued that *Ashurst* was precluded by SLUSA because it was a "covered class action" that alleged misrepresentations that supposedly caused the sale of money market mutual fund shares to purchase interests in SAIF.

3. To avoid removal, Plaintiffs represented to this Court that their Petitions did not allege that Defendants were ERISA fiduciaries or that they had breached their duties. The *Ashurst* plaintiffs also represented to the Court that they were not contending that misrepresentations had caused their mutual fund shares to be transferred into SAIF. The Court granted Plaintiffs' motion to remand, *expressly* basing its decision on the Plaintiffs' critical representations.

4. Two recent developments, however, demonstrate that the Plaintiffs abandoned those representations once the threat of removal seemed to pass. First, Plaintiffs' discovery responses in state court directly contradict the representations they made to this Court. These discovery responses demonstrate that Plaintiffs *are* contending that Defendants acted as functional ERISA fiduciaries who breached their duties by mismanaging the ERISA plan assets

---

[3] SLUSA is the Securities Litigation Uniform Standards Act, 15 U.S.C. § 77p, et seq.

contained in SAIF. Second, Rouse Hendricks recently refiled the *Adair* lawsuit – this time styled as *Evans v. JPMorgan Chase Bank, N.A.*, No. 13-00686 (W.D. Mo.) – making materially identical allegations but this time pled expressly as *an ERISA claim*. In short, despite their representations to this Court, Plaintiffs are making allegations in this Lawsuit *that their own lawyers think are sufficient to state an ERISA breach of fiduciary duty action*. ERISA, therefore, clearly preempts the Lawsuit.

5. Plaintiffs' actions also belie the representations they made to this Court to avoid SLUSA preclusion. Plaintiffs told this Court that they were not challenging the 2006 "mapping" of mutual fund shares into SAIF. In fact, they went so far as to claim that those transfers had affected only *other participants*. Yet, state court discovery now reveals that they *are* contending in this Lawsuit that alleged misrepresentations caused the transfer of *their own* mutual fund shares into SAIF in 2006. SLUSA thus precludes the Lawsuit.

6. Accordingly, Defendants now remove the Lawsuit to federal court again because Plaintiffs' discovery responses establish that it is preempted by ERISA and precluded by SLUSA.

## PROCEDURAL HISTORY

### A. Plaintiffs' Filings And Defendants' Prior Removals

1. Plaintiffs' counsel, Rouse Hendricks, filed their first lawsuit on behalf of several hundred GEHA Plan participants on July 31, 2012, making claims essentially identical to those at issue here. (*See Adair* Petition, attached as Ex. A). The *Adair* defendants timely removed the matter to this Court because the state court action was completely preempted by ERISA and because the Western District had diversity jurisdiction under CAFA. (*Adair* Notice of Removal, attached as Ex. B). Rouse Hendricks then immediately voluntarily dismissed the *Adair* action. (*Adair* Voluntary Dismissal, attached as Ex. C).

3
5823427 v1
Case 4:13-cv-00802-BCW   Document 1   Filed 08/15/13   Page 3 of 19

2. Shortly thereafter, in September 2012, Rouse Hendricks filed the Lawsuit in the Circuit Court of Jackson County, Missouri. (*Ashurst* Petition, Ex. D; *Adams* Petition, Ex. E). On October 11, 2012, Defendants removed the Lawsuit to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446 based on ERISA complete preemption and SLUSA preclusion. (*Ashurst* Notice of Removal, Ex. F; *Adams* Notice of Removal, Ex. G). Defendants argued that ERISA completely preempted the Lawsuit because Plaintiffs' state-court complaints involved an ERISA plan and alleged that Defendants mismanaged ERISA plan assets invested in the SAIF and made false and misleading communications to plan participants about SAIF – allegations which, if true, set out a claim for breach of fiduciary duty under ERISA Section 502(a)(2). Additionally, the complaints sought to recover as "damages" ERISA plan assets: fees allegedly withdrawn improperly from their ERISA Plan accounts, and profits which their Plan accounts allegedly should have earned were SAIF managed more prudently. This relief is only available to plan participants under ERISA.

3. Defendants also argued that removal was proper because *Ashurst* was a "covered class action" under SLUSA, 15 U.S.C. §§ 77p(f)(2) and 78bb(f)(5)(B). (Ex. F, ¶ 26). Many of the SLUSA requirements were apparent on the face of the Petition: *Ashurst* was an action in Missouri state court seeking relief on behalf of more than 50 persons, and questions of law of fact common to those persons predominated over any questions affecting only individual persons. *Id.* at ¶ 25. Defendants asserted that the final SLUSA requirement – that the lawsuit allege a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," 15 U.S.C. §§ 77p(b)(1), 78bb(f)(2) – was satisfied by the allegation that Defendants' alleged misrepresentations caused the assets invested in a covered security to be

4

mapped to SAIF, and caused Plaintiffs to continue investing in SAIF rather than in covered securities. *Id.* at ¶¶ 28-30.

B. **Plaintiffs' Motion To Remand Was Based On Key Factual Representations**

4. On November 11, 2012, Plaintiffs moved to remand the Lawsuit to the Circuit Court of Jackson County, arguing that neither ERISA nor SLUSA provided a basis for removal. Plaintiffs asserted that Defendants had misread the Petition and made the following key factual representations regarding their claims:

(a) They were not suing Defendants in a fiduciary capacity and were not claiming that any Defendants were Plan fiduciaries. (Ex. H (*Ashurst* Mem. in Support of Mot. to Remand), at 1, 7; Ex. I (*Adams* Mem. in Support of Mot. to Remand) at 1, 8).

(b) They were asserting claims only for misrepresentations relating to communications about SAIF and its performance, and were not asserting claims that Defendants mismanaged any Plan assets. (Ex. J (*Ashurst* Reply in Support of Mot. to Remand) at 1; Ex. K (*Adams* Reply in Support of Mot. to Remand) at 4-5).

(c) Plaintiffs' claims were unrelated to the mapping of their funds from the J.P. Morgan Prime Money Market Fund to SAIF in 2006. (Ex. J at 13, Ex. K at 8-9).

(d) The GEHA Plan participants whose funds were mapped into SAIF in 2006 are different from the Plaintiffs in the Lawsuit. (Ex. J at 2, 9).

C. **The Court's Decision To Remand Adopted These Factual Representations**

5. On May 14, 2013, relying on these factual representations, this Court remanded the Lawsuit to Missouri state court. The Court made the following findings in its remand orders:

(a) "The Petition neither alleges that Defendants were involved in Plan administration or management, nor that Defendants mismanaged fund assets. Simply put, the

5

5823427 v1
Case 4:13-cv-00802-BCW   Document 1   Filed 08/15/13   Page 5 of 19

Petition claims that SAIF was different from what Defendants represented, not that Defendants mismanaged the SAIF assets." (Ex. L (*Ashurst* Remand Order), at 4-5; Ex. M (*Adams* Remand Order), at 4).

(b) "The Petition makes no allegation that Defendants made statements in a fiduciary capacity, and Defendants provide no basis [upon] which this Court can conclude otherwise." (Ex. L at 5; Ex. M at 5).

(c) "While Plaintiffs allege Defendants' misrepresentations began around the time some of the Plaintiffs' money was mapped into SAIF, the Court is persuaded by Plaintiffs' argument that the SAIF investments of which the Petition complains are the 2008-2011 annual GEHA contributions into Plaintiffs' Plan accounts, not the 2005 mapping." (Ex. L at 7).

(d) "Plaintiffs do not allege that they compared SAIF to mutual funds or that Defendants prevented them from investing in mutual funds. Thus, Defendants have merely shown the availability of mutual funds as an investment option in addition to other stable value funds." (*Id.* at 8).

**D. Plaintiffs' State Court Discovery Responses Directly Contradict The Representations On Which The Court Relied In Remanding The Lawsuit**

6. Following remand, Defendants served Plaintiffs with Requests for Admissions seeking to confirm the representations Plaintiffs had made in their motion to remand. Plaintiffs' answers to the Requests directly contradict the positions they took in the remand papers and confirm that Plaintiffs are, in actuality, bringing federal claims over which this Court has original and exclusive jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), and which may be removed to this Court pursuant to 28 U.S.C. § 1441(b).

7. The Court's remand order rejecting ERISA preemption was based on Plaintiffs' representation that they were not contending that Defendants were fiduciaries or that Defendants

6

had mismanaged SAIF's assets. Yet Plaintiffs' Responses to the Requests for Admissions demonstrate the opposite:

> 21. Admit that none of the Defendants exercised any authority or control respecting management or disposition of the Plan's assets.
>
> **ANSWER:** Denied; see response to Request No. 20. Defendants' marketing led to the misrepresented investment option in SAIF being in Plan.
>
> \*\*\*
>
> 23. Admit that none of the Defendants had any discretionary authority or discretionary responsibility in the administration of the Plan.
>
> **ANSWER**: Denied. Defendants' marketing led to use of a misrepresented investment, i.e. SAIF, in Plan. See responses to Requests No. 20-22.
>
> 24. Admit that Defendants had no responsibility for managing SAIF's investments.
>
> ANSWER: Denied, based on the fact that JPMAM's actions impacted SAIF's investments, and because Defendants' marketing and false statements led to use of a misrepresented investment, *i.e.* SAIF, in Plan [sic]. See also response to Request No. 14.
>
> 25. Admit that you are not claiming as part of this lawsuit that Defendants mismanaged SAIF's investments.
>
> **ANSWER:** Denied, based on the facts that JPMAM's actions impacted SAIF's investments, and because Defendants' marketing and false statements led to use of a misrepresented investment, *i.e.*, SAIF, in Plan. See also response to Request No. 14.
>
> 26. Admit that you are not claiming as part of this lawsuit that Defendants made any imprudent decisions with respect to the investments underlying SAIF.
>
> ANSWER: Denied. See responses to Requests No. 24-25.
>
> 27. Admit that Defendants made no discretionary communications to you regarding Plan administration.
>
> **ANSWER**: Denied, because Defendants' marketing and false statements led to use of a misrepresented investment, i.e., SAIF, in Plan. See also response to Request No. 14.
>
> 28. Admit that Defendants made no discretionary communications to you regarding Plan assets.

7

> **ANSWER**: Denied, because Defendants' marketing and use of SAIF in their menu of investment proposals for the Plan led to use of a misrepresented investment, i.e., SAIF, in Plan. See also response to Request No. 14.

(*See* Responses, Ex. N).

8. Just last month, moreover, Rouse Hendricks refiled materially identical claims on behalf of the *Adair* plaintiffs *in federal court under ERISA*, this time against J.P. Morgan Chase Bank, N.A., SAIF's trustee. (*See* Complaint in *Evans v. JPMorgan Chase Bank, N.A.*, No. 13-00686 (W.D. Mo.) (Ex. O).) The *Evans* plaintiffs are, like the Plaintiffs in this Lawsuit, participants in the GEHA Plan, and the *Evans* complaint challenges the same alleged conduct that is at issue here: mismanagement of and misrepresentations regarding Plan assets. Rouse Hendricks, therefore, clearly believes that the alleged conduct at issue in all three cases is sufficient to state ERISA claims.

9. Likewise, the Court's remand order denying SLUSA preclusion was based on Plaintiffs' representation that they were *not* claiming that any misrepresentations caused their investments in the J.P. Morgan Prime Money Market Fund to be mapped or transferred into SAIF. (Ex. L at 7-8.) Again, however, Plaintiffs' Responses directly contradict their prior representation:

> 17. Admit that you are not claiming as part of this lawsuit that any misrepresentation caused your investments in the J.P. Morgan Prime Money Market Fund to be "mapped" or otherwise transferred into SAIF when SAIF was added to the Plan in July 2006.
>
> **ANSWER**: Denied. See responses to Requests No. 1 and 14.

(Ex. N).

## ADDITIONAL RELEVANT FACTS

10. Plaintiffs are current or former employees of GEHA who are participants in the GEHA Plan, an ERISA-regulated pension plan sponsored by GEHA. (Ex. D, ¶ 19; GEHA Plan

8

Document, Ex. A to August 29, 2012 Declaration of Katherine Downing, attached as Ex. P). GEHA makes cash contributions to the Plan, which are allocated to individual accounts maintained for each participant under the Plan. (GEHA Plan, §§ 4, 5). Plaintiffs do not own the contributions held in their accounts; instead, the contributions are held in a trust and the Plan provides that the trustee "shall have legal title to all of the assets in the Trust Fund." (*Id.* § 17.1). Plaintiffs are entitled to receive a distribution of funds held in their accounts only if they meet specific requirements not alleged to have been met here. (*Id.* §§ 9.1; 10.13).

11. GEHA Plan participants are permitted to direct the investment of contributions allocated to their accounts among investment options selected by the GEHA Plan's fiduciaries, who are also GEHA employees. (*Id.* § 5.4). The GEHA Plan fiduciaries selected the SAIF as one of the investment options in the GEHA Plan. (Participation Agreement, Ex. B to Downing Decl. attached as Ex. P). SAIF is a bank collective trust fund, referred to in ERISA, 29 U.S.C. § 1108(b)(8), and established by J.P. Morgan Chase Bank, N.A. ("JPMC Bank"), a wholly owned subsidiary of defendant J.P. Morgan Chase & Co. Only certain tax-qualified ERISA regulated plans and tax-qualified governmental plans may invest in SAIF. (Declaration of Trust, Ex. C to Downing Decl. attached as Ex. P, § 1.3(e) & Art. II at pp. 5-6, 17). The assets held by SAIF, including the GEHA Plan's proportionate interest in SAIF, are deemed to be ERISA "plan assets" maintained under JPMC Bank's custody and control. *See* 29 C.F.R. § 2510.3-101(h)(ii). Thus, the GEHA Plan offered SAIF as an investment option and Plaintiffs directed the investment of some of their Plan accounts' assets into SAIF. Plaintiffs did not, and could not, purchase or hold interests in SAIF outside of their participation in the GEHA Plan.

12. Immediately before the GEHA Plan fiduciaries added SAIF as an investment option in the GEHA Plan, all of the Plan's investment options were mutual funds, *i.e.* investment

companies registered under the Investment Company Act of 1940. (*See* October 10, 2012 Downing Decl., attached as Ex. Q, at ¶ 3; 15 U.S.C. § 77r(b)(2)). Similarly, after the GEHA Plan fiduciaries added SAIF to the Plan's investment menu, all of the GEHA Plan's other investment options were mutual funds. (*See* Ex. Q, ¶ 4).

13. When the GEHA Plan fiduciaries added SAIF to the Plan's investment menu, Plan assets invested in the J.P. Morgan Prime Money Market Fund[4] were "mapped" to SAIF. (Declaration of Jennifer Mendicki O'Neill, Ex. R at ¶ 3). This "mapping" entailed the sale of shares in the Prime Money Market Fund to purchase interests in SAIF. (*Id*).

14. *Ashurst* and *Adams* are pending in the same court and involve common questions of law and fact. *Ashurst* seeks damages on behalf of more than 50 people. *Ashurst* and *Adams* together seek damages on behalf of more than 50 people. *Ashurst* and *Adams*, while not formally joined or consolidated, are proceeding as a single case in state court.[5] The Petitions in *Ashurst* and *Adams* are virtually identical but for the fact that they are being brought by different groups of GEHA employees. Both cases have been assigned to the same state court judge, and have been docketed together by the court for a joint case management conference. In addition, discovery in *Ashurst* and *Adams* is proceeding as though the cases were a single action, as the parties have agreed that discovery taken in one case may be used in the other interchangeably.

---

[4] The Prime Money Market Fund is part of the JPMorgan Trust I, an open-ended investment company which is the successor to the J.P. Morgan Mutual Fund Series. *See* http://www.sec.gov/Archives/edgar/data/1217286/000104746905008065/a2154597z497.txt. JP Morgan Trust I (and thus the Prime Money Market Fund) is registered under the Securities Act of 1933 and the Investment Company Act of 1940 pursuant to its predecessor's Form N-1A registration statement filed with the Securities and Exchange Commission. See http://sec.gov/Archives/edgar/data/1217286/000104746903007028/a2104385zn-1aa.txt.

[5] SLUSA authorizes removal of a group of actions pending or filed in the same court that are proceeding together as "a single action" for any purpose. *See* 15 U.S.C. §§ 77p(f)(2) and 78bb(f)(5)(B).

5823427 v1

After discussing discovery in *Ashurst* and *Adams* with the Plaintiffs, Defendants wrote to Plaintiffs to memorialize the conversation:

> In addition to document discovery issues, we discussed several other topics that I wanted to address here. We discussed the consolidation of the *Ashurst* and *Adams* cases. <u>You agreed that the cases should proceed as if brought in a single action</u>. We discussed various ways to accomplish this and we believe consolidating the cases is appropriate to ensure that discovery can be coordinated (e.g. witnesses deposed only once) and to minimize the number of appearances that the witnesses will have to make at trial. We understand that you are comfortable consolidating the actions, but that you do not want us to use the consolidation as a basis for removal. We propose a stipulation of the parties that *Ashurst* be consolidated into *Adams* (the Petition that we understand you would want to proceed under), with the stipulation that we would not use the fact of the consolidation as an independent basis for removal. Please let us know if you are willing to proceed on that basis and, if so, we will prepare a draft stipulation for your consideration.

(June 14, 2013 Letter From A. Hayne to R. Hendricks, attached as Ex. S, at 3). Though they would not agree to formally consolidate the cases without assurances that Defendants would not seek to remove the cases again on any grounds, Rouse Hendricks proposed to Defendants that discovery in both cases proceed as if it was taken in a single case:

> Plaintiffs intend to proceed with discovery in the Ashurst and Adams cases in a manner that will minimize any inconvenience to the court, parties or witnesses. If Defendants agree, we propose to treat depositions, document productions, interrogatories and third-party discovery taken in one case as if they were taken in the other.

(*See* June 20, 2013 Letter from L. Rouse to A. Hayne, attached as Ex. T).

## REMOVAL UNDER ERISA

**A.    Removal Based On ERISA Complete Preemption**

15.    Federal question jurisdiction is ordinarily ascertained from the face of the well-pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). A corollary to the

11

5823427 v1
Case 4:13-cv-00802-BCW   Document 1   Filed 08/15/13   Page 11 of 19

well-pleaded complaint rule is the "artful pleading" doctrine, which holds that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). The artful pleading doctrine allows removal if federal law completely preempts a state-law claim, because a preempted claim can arise only under federal law, not state law. *Id*. at 471 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987).

16. ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation is "exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Under ERISA complete preemption, any state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement mechanism is completely preempted and may be removed to federal court. *Id.* at 209; *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987); *Metro. Life Ins. Co.*, 481 U.S. at 66; *Neumann v. AT&T Commcn's, Inc.*, 376 F.3d 773, 780-81 (8th Cir. 2004).

17. If a case is not initially removable, a notice of removal may be filed within 30 days of receipt by the defendant of a subsequent "other paper" from which it may first be ascertained that the case is removable. 28 U.S.C. § 1446(b)(3). Discovery responses, such as the Requests for Admission, are an "other paper" which may trigger removal under Section 1446(b)(3). *Branham v. Hunter's View, Ltd.*, No. 11-0230, 2011 WL 1660559, at *2 (E.D. Mo. May 3, 2011) (discovery responses are sufficient "other paper" to trigger removal); *Pritchett v. Wal-Mart Stores, Inc.*, CIV-11-052-RAW, 2011 WL 1258051 (E.D. Ok. Apr. 4, 2011) (defendant established jurisdictional amount for removal where plaintiff denied request for admission seeking admission that her damages did not exceed $75,000). Plaintiffs served their responses to Defendants' Requests for Admissions on July 17, 2013, and Defendants' removal is being filed within 30 days of that date.

12

## B. ERISA Completely Preempts The Lawsuit

18. Plaintiffs' responses to the Requests for Admissions demonstrate that they have no intention of limiting their claims in the manner described in their motion to remand. Rather, they are attempting to cloak exclusively federal ERISA claims in a state-law mantle to avoid federal jurisdiction. This type of gamesmanship should not be countenanced. Plaintiffs' claims are completely preempted by ERISA and properly removable to this Court.

19. In their motion to remand, Plaintiffs insisted that they were suing non-fiduciaries over conduct that did not implicate ERISA's fiduciary duties (*i.e.*, non-fiduciary conduct). To quote their remand motion: "Plaintiffs neither asserted claims for breach of fiduciary duties nor sued ERISA fiduciaries; thus, Plaintiffs' claims could not be brought under § 502(a)(2) [of ERISA]." (Ex. H, at 7; Ex. I, at 7). Plaintiffs' Responses to the Requests for Admission, however, contradict this and other statements and establish the basis for complete preemption and removal.

20. ERISA's definition of "fiduciary" is functional; a person is considered a fiduciary to the extent he or she was "performing a fiduciary function" when taking the action in question. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). The statute enumerates the functions that give rise to fiduciary status and thus constitute fiduciary acts, including: (a) exercising "any authority or control respecting management or disposition of [a plan's] assets," (b) exercising "any discretionary authority or discretionary control respecting management of [a] plan," or (c) having "discretionary authority or discretionary responsibility in the administration of [a] plan." *See* 29 U.S.C. § 1002(21)(A). The Supreme Court has interpreted fiduciary acts to encompass the making of discretionary misrepresentations regarding the management of an ERISA plan. *Varity Corp. v. Howe*, 516 U.S. 489 (1996).

13

21. Through their Responses to the Requests for Admissions quoted above, Plaintiffs have demonstrated that they *are* contending that Defendants acted as functional fiduciaries because they engaged in one or more of the actions that constitute fiduciary activity under the statute. Plaintiffs' responses establish that their Lawsuit alleges Defendants:

> (a) exercised authority or control respecting management or disposition of the Plan's assets (Response 21);
>
> (b) had discretionary authority or responsibility in the administration of the Plan (Response 23);
>
> (c) had responsibility for managing SAIF's investments (which are ERISA Plan assets) (Response 24):
>
> (d) mismanaged SAIF's investments (which are ERISA plan assets) (Response 25); and
>
> (e) made discretionary communications to Plaintiffs regarding Plan administration and Plan assets (Responses 27 & 28).

These responses establish that Plaintiffs' state law claims are either disguised fiduciary breach claims or, at a minimum, seek to duplicate such claims. Because such claims fall squarely within ERISA's civil enforcement scheme, they are completely preempted and removable. *Davila*, 542 U.S at 210; *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005).

22. In addition, Plaintiffs' Responses demonstrate that they are seeking Plan benefits as a remedy in the Lawsuit. The Lawsuit seeks disgorgement of fees that were supposedly improperly paid for investments in SAIF. "Plaintiffs admit that the fees charged Plaintiffs were to their Plan accounts …." (Ex. N, Response no. 5). ERISA authorizes a plan participant to bring an action "on behalf of the plan" to recover for alleged misconduct that impairs the value of plan assets. 29 U.S.C. §§ 1109(a), 1132(a)(2); *LaRue v. DeWolf , Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008). To the extent the GEHA Plan should not have paid management fees to

14

5823427 v1
Case 4:13-cv-00802-BCW   Document 1   Filed 08/15/13   Page 14 of 19

J.P. Morgan, the right to seek recovery of those "excessive" fees belongs to the Plan. Plaintiffs may assert that right derivatively through an action under Section 1132(a), but may not usurp the Plan's interest in those assets by seeking disgorgement to Plaintiffs in their individual capacities.[6] Allowing such recoveries would violate the terms of the Plan[7] and subject pension plans and service providers to conflicting standards of conduct based on state law. *See Davila*, 542 U.S. at 208 (noting Congress's intent to create "a uniform regulatory regime over employee benefit plans"). Thus, ERISA's enforcement provisions provide the exclusive means by which Plaintiffs as participants in the GEHA Plan may bring an action to disgorge fees paid by the Plan.

23. ERISA's remedial scheme is further implicated because Plaintiffs' claim for "disgorgement" is really just a suit to recover additional benefits under the Plan. In a defined contribution plan, like the GEHA Plan, "an employee's retirement benefit is the eventual value of his or her account to which contributions have been made by the employer and/or the employee." *West v. AK Steel Corp.*, 484 F.3d 395, 399 (6th Cir. 2007). If Plaintiffs are successful in suing on behalf of the GEHA Plan to disgorge "excessive" fees from Defendants, "the receipt of that money will constitute the receipt of a plan benefit" because it will increase the value of their defined contribution accounts. *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007). ERISA expressly provides for an action by a participant "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Thus, to the extent that Plaintiffs seek disgorgement of fees paid out of their Plan accounts, they are bringing a claim for Plan

---

[6] Section 1132(a)(2) authorizes a participant to bring an action "for appropriate relief under section 1109." Section 1109(a) permits recovery of losses to a plan and disgorgement of profits, the remedies sought here. Section 1132(a)(3) allows suits against non-fiduciaries for disgorgement. *See Harris Trust & Savs. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000).

[7] Under the terms of the Plan, distributions are permitted to Plaintiffs only upon death, disability, and termination of employment. (Ex. A to 8/29/12 Downing Declaration, attached as Ex. P, at p. 27). Nothing in the Plan or ERISA allows Plaintiffs to receive distributions through the acquisition and assertion of the Plan's claims for their own interests and their own recoveries.

benefits. That claim falls squarely within ERISA's enforcement scheme and is completely preempted. *See, e.g., Taylor*, 481 U.S. at 63 (suit to recover plan benefits completely preempted); *Neumann v. AT&T Comm'cns, Inc.*, 376 F.3d 773, 780-81 (8th Cir. 2004) (claim seeking plan benefits under state law completely preempted).

## REMOVAL UNDER SLUSA

24. As an independent ground for removal, Plaintiffs' Responses to the Requests for Admissions make it clear that, in contrast to their representations on the motion to remand, their claims involve the purchase or sale of covered securities and are, therefore, precluded by SLUSA.

25. SLUSA provides for the removal of any "covered class action" brought in any state court which is based upon state statutory or common law alleging, *inter alia*, a misrepresentation or omission of a material fact "in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b), (c); 15 U.S.C. § 78bb(f)(1), (2).

26. The Lawsuit is a "covered class action" within the meaning of SLUSA because it is a group of actions filed or pending in the same court "proceed[ing] as a single action for any purpose" in which damages are sought on behalf of more than 50 persons and questions of law and fact common to those persons, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons. *See* 15 U.S.C. §§ 77p(f)(2) and 78bb(f)(5)(B). Furthermore, the Lawsuit is brought in Missouri state court based upon the statutory and common law of Missouri, and alleges a "misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" for purposes of 15 U.S.C. §§ 77(p)(b), 78bb(f)(1). Accordingly, the Lawsuit is removable under 15 U.S.C. §§ 77p(c) and 78bb(f)(2).

27. Immediately before the GEHA Plan fiduciaries added SAIF as an investment option in the GEHA Plan in 2006, all of the Plan's investment options were mutual funds, *i.e.* investment companies registered under the Investment Company Act of 1940. *See* October 10, 2012 Downing Decl. ¶ 3; 15 U.S.C. § 77r(b)(2). The Lawsuit alleges that Defendants' misrepresentations caused Plaintiffs to transfer or "map" $30 million from J.P. Morgan's Prime Money Market Fund, which involved the sale of mutual fund shares (*i.e.*, "covered securities") to purchase interests in SAIF. (*See* Ex. D ¶¶ 3, 7, 31, 48; Ex. E ¶¶ 3, 7, 32, 48). On the basis of these allegations, Defendants removed under SLUSA, asserting that the Lawsuit is a covered class action alleging a misrepresentation or omission of a material fact "in connection with the purchase or sale of a covered security."

28. In an attempt to avoid SLUSA preclusion, Plaintiffs insisted that their claims related only to investments made through employer contributions to SAIF from 2008 to 2011 and did not involve the 2006 mapping. (Ex. J, at 9 ("Defendants further ignore that the 2005 [sic] mapping involved a different set of participants than those invested in SAIF from 2008-2011.").) The Court accepted this representation, stating that it was "persuaded by Plaintiffs' argument that the SAIF investments of which the Petition complains are the 2008-2011 annual GEHA contributions into Plaintiffs' Plan accounts, not the 2005 mapping." (Ex. L, at 7).

29. Plaintiffs' Responses now demonstrate that they *are* claiming Defendants' misrepresentations caused their investments in a mutual fund to be mapped or otherwise transferred into SAIF when SAIF was added to the Plan in 2006. When asked to admit that they are not claiming as part of this lawsuit that any misrepresentation caused their investments in the J.P. Morgan Prime Money Market Fund to be "mapped" or otherwise transferred into SAIF when SAIF was added to the Plan in July 2006, Plaintiffs denied the statement. (Ex. N, Response no.

17). This is tantamount to an admission by Plaintiffs that they are pursuing the *very* claim which they told the Court was not a part of the Lawsuit. Since the previously-disclaimed mapping allegation brings the Petition within SLUSA's purview, the Lawsuit is removable and precluded.

30. Finally, to the extent the Petition is not precluded by SLUSA, this Court has supplemental jurisdiction over Plaintiffs' Missouri Securities Act claim pursuant to 28 U.S.C. § 1367.

## OTHER REMOVAL REQUIREMENTS

31. Because Plaintiffs filed this action in the Circuit Court of Jackson County, Missouri, Sixteenth Judicial Circuit, removal to the United States District Court for the Western District of Missouri is proper under 28 U.S.C. § 1441(a).

32. Furthermore, divisional assignment to the Western Division of the Western District of Missouri is appropriate because at least one Plaintiff resides in the Western Division and Plaintiffs allege that their claims arose in the Western Division. (*See* Ex. D. ¶ 40; Ex. E, ¶ 40; Local Rule 3.1(b)).

33. As required by 28 U.S.C. § 1446(b), this notice is filed within 30 days of any Defendant being served with Plaintiffs Responses to Defendants' Requests for Admissions. 28 U.S.C. § 1446(b)(3); *see* Ex. N.

34. All named Defendants have consented to join in the removal of this action to federal court.

35. As required by 28 U.S.C. § 1446(d), Defendants will give notice of this removal to Plaintiffs through their attorneys of record. Defendants will also file a copy of this Notice with the Circuit Court of Jackson County, Missouri, Sixteenth Judicial Circuit, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants remove this case from the Circuit Court of Jackson County, Missouri, to the United States District Court for the Western District of Missouri.

Dated: August 15, 2013

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: /s/ Joe Rebein
    Joe Rebein (Mo. Bar No. 35071)
    Kay C. Whittaker (Mo. Bar No. 44328)
    2555 Grand Blvd.
    Kansas City, MO 64108
    Tel. 816.559.2227
    Fax 816.421.5547
    jrebein@shb.com
    cwhittaker@shb.com

MORGAN, LEWIS & BOCKIUS LLP

    Gregory C. Braden
    1111 Pennsylvania Avenue, NW
    Washington, D.C. 20004
    Tel. 202.739.5217
    Fax 202.739.3001
    gbraden@morganlewis.com

    Azeez Hayne
    1701 Market Street
    Philadelphia, PA 19103
    Tel. 215.963.5426
    Fax 215.963.5001
    ahayne@morganlewis.com

*Attorneys for Defendants*